J-A13005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAJA NEVELS, | |
| Appellant | No. 949 WDA 2015 |

Appeal from the Judgment of Sentence of May 18, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015604-2014

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.:

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 30, 2016**

Appellant, Jaja Nevels, appeals from the judgment of sentence entered on May 18, 2015, following his bench trial convictions for carrying a firearm without a license, persons not to a possess a firearm, and possession of a small amount of marijuana.[1]  We affirm.

The able trial court summarized the facts of this case as follows:

> Officer Joseph Barna, of the City of Pittsburgh Police Department […] was patrolling the North Side of the City of Pittsburgh in a marked patrol unit on October 24, 2014, when he came into contact with [Appellant].  He identified [Appellant at trial].

---

[1]  18 Pa.C.S.A. § 6106, 18 Pa.C.S.A. § 6105, and 35 P.S. § 780-113(a)(31), respectively.

While patrolling on said date, Officer Barna viewed a black Pontiac with no headlights [] at the intersection of Concord and Chestnut Streets at 1:50 a.m. He pulled behind the vehicle, made a left hand turn onto Concord Street and initiated his vehicle's lights and siren. The officer observed the passenger in the vehicle, who turned out to be [Appellant], immediately dip in an attempt to conceal something under the passenger seat of the vehicle. At the time of his observation, the officer was a few feet behind the vehicle with his headlights, audible lights and siren all on. According to Officer Barna, [Appellant] was in the passenger seat and Ms. Jackson Manley was in the driver seat.

Officer Barna [] observed [Appellant's] front body move forward and a shoulder dip. Through his training and experience, the officer said it was like someone attempting to conceal something. After he saw this movement, the driver pulled off to the right-hand side of the roadway very close to a wall in front of 834 Concord Street. As Officer Barna was exiting his vehicle, [Appellant] exited the Pontiac and started to try to walk away, but because the vehicle was parked too close to the wall the door could only open 1 to 1½ feet and [Appellant] had to come back towards the officer. At that time, Officer Barna told him to get back in the car, which he eventually did.

Officer Barna['s] car did not have a computer inside, so he could not run the plates, but a neighboring zone officer told him it was a stolen vehicle. When asking the driver for her license and registration, he observed that [Appellant] was extremely nervous. He was visibly shaking. He was moving about [] and would not make eye contact[.] [Officer Barna] requested him multiple times to stop moving, at which point he picked up an iPad and started playing with that. [Officer Barna] asked him to put the iPad back down as well. Officer Barna believed the iPad was in the passenger's side door pocket.

At some point, backup arrived. Officer Barna thought the driver was under the influence of drugs or alcohol, as she smelled of an alcoholic beverage, so he detained her since it was also a stolen vehicle.

[…O]fficer Barna [] testified that the movement he observed [Appellant] make while he was behind the vehicle was different from the movement [Appellant] made when he took the iPad from the door panel. When [Appellant] grabbed the iPad, he was still sitting back in his seat and just reached over and grabbed it. When he placed whatever he concealed under the seat, he actually had to lean physically forward. As such, the officer [] observed [Appellant's] body, and right shoulder in particular, move in the forward and down direction. Finally, Officer Barna testified the lights on his vehicle adequately allowed him to see inside the vehicle in front of him.

The Commonwealth next called [O]fficer Jenny Monteleone to testify. […] On October 24, 2014, Officer Monteleone was on patrol in a marked vehicle in full uniform. Officer Barna had called out that he had conducted a traffic stop and right before she arrived at the scene, a Zone 2 officer called out that the vehicle may have been stolen. Once she arrived on scene, Officer Barna informed her that he had spoken to the driver and told her of the movements the passenger ([Appellant]) had made. Officer Monteleone stated she as able to observe the passenger in the vehicle and she identified him in the courtroom as [Appellant].

According to Officer Monteleone, Officer Barna had the driver of the vehicle step out of the car and she was detained. After a few more units arrived on the scene, she was able to get over to the passenger side and get [Appellant] out of the car. Once [Appellant] complied, he was detained, and based upon the information she received, the vehicle was searched. Officer Monteleone recovered under the passenger seat, a .357 Magnum. Upon questioning, [Appellant] stated to Officer Monteleone that he did not have a license to carry a firearm.

[The Commonwealth provided further evidence] from the State Police stating that [Appellant] does not have a valid license to carry a firearm[.]

[Appellant] was searched and [police] recovered a pack of cigarettes from [Appellant's] right pocket and a small baggie of marijuana inside. Officer Monteleone was present when the search was conducted. [There was] a stipulation

relative to the crime lab report that indicated the substance was tested and found to be positive for Schedule I marijuana.

Officer Monteleone next testified the gun was loaded, had a round in the chamber, and was submitted to the Allegheny County Office of Medical Examiner. [There] was a stipulation relative to the .357 Magnum indicating it was in good operating condition and met the requirements of barrel length eligible to be a revolver.

Finally, Officer Monteleone stated that she determined that [Appellant] was not a person eligible to possess a firearm as he had a prior conviction with a felony drug charge in August of 2012. The certified conviction was admitted into evidence.

Trial Court Opinion, 12/21/2015, at 3-7 (quotations and record citations omitted).

The trial court held a bench trial on May 18, 2015. At its conclusion, the trial court found Appellant guilty of the aforementioned crimes. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

    I.    Was the evidence sufficient to prove beyond a reasonable doubt that [Appellant] actively or constructively possessed a firearm in order to uphold convictions of person not to possess a firearm and carrying a firearm without a license?

Appellant's Brief at 4 (complete capitalization omitted).

_____

[2] On June 17, 2015, Appellant filed a notice of appeal. On July 6, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After receiving an extension of time from the trial court, Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 21, 2015.

Appellant contends the Commonwealth failed to produce sufficient evidence that he possessed the gun at issue because police did not recover it from his person and the Commonwealth failed to prove he constructively possessed it. He claims the only evidence presented connecting him to the gun was his position "in the car where the gun was present under the seat" and his movement wherein "his right shoulder dipped down and to the side where he had an iPad stored." *Id.* at 14. Appellant claims that "[i]t was just as likely that [his] right shoulder dipped because he reached for the iPad or for the marijuana in his pocket, as it was that he was hiding a firearm." *Id.* at 16. Appellant asserts there was no physical evidence recovered by police linking him to the firearm, such as his DNA or fingerprints. *Id.* at 15. Further, Appellant "never confessed to owning the gun or possessing it." *Id.* Finally, he claims the trial court erred in relying upon police testimony that Appellant appeared nervous at the scene to indicate consciousness of guilt, because:

> Traffic stops are stressful situations that make people nervous. Additionally, considering that the driver of the vehicle smelled of alcohol, she drove a stolen vehicle, and [Appellant] had marijuana on him, it was not surprising that [Appellant] appeared nervous. He probably had serious concerns about being arrested with the drugs on his person. [Appellant's] nervousness simply does not equate to [Appellant] knowing about a gun hidden under the seat.

*Id.* at 14-15. Thus, Appellant contends the trial court based his firearm convictions on speculation and conjecture. *Id.* at 18.

Our standard of review is well-settled:

- 5 -

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Irvin*, 134 A.3d 67, 75-76 (Pa. Super. 2016) (internal citation and brackets omitted).

Appellant challenges the trial court's determination that he possessed, or maintained control over, the firearm found under the passenger's seat in order to support his firearm convictions for persons not to possess a firearm and carrying a firearm without a license. As Appellant was not in physical possession of the firearm, the Commonwealth was required to establish that he had constructive possession of it to support his convictions:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive

possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (internal citation omitted).

Here, the trial court determined:

In the present case, [Appellant] was a passenger in the front seat of the vehicle and the weapon was found under his seat. Officer Barna clearly testified when his vehicle was a few feet behind the possibly stolen vehicle, with full lights and siren on, he observed the passenger's body move forward and shoulder dip in an attempt to conceal something under the passenger seat of the vehicle. On redirect [examination], Officer Barna again clearly testified he observed [Appellant's] body and, right shoulder in particular, move in the forward and down direction. Thus, [Appellant] had the ability to control the weapon.

In addition, [Appellant] was observed by Officer Barna and displayed behavior indicating consciousness of guilt, specifically, extreme nervousness and visibl[e] shaking.

Hence, the evidence was sufficient to show that [Appellant] had both the ability and intent to exercise control over the firearm located in the vehicle. [The trial court] conclude[d] that in viewing the totality of evidence presented at trial, there was sufficient evidence to determine [Appellant] constructively possessed the firearm.

Trial Court Opinion, 12/21/2015, at 9-10 (record and legal citations omitted).

Upon review of the certified record and applicable law, we agree that the Commonwealth established Appellant constructively possessed the gun to support his firearm convictions. Officer Barna testified that when he

pulled the car over in which Appellant was a passenger, he could see Appellant "attempt to conceal something under the passenger's seat of the vehicle." N.T., 5/18/2015, at 10. Officer Barna was able to see Appellant clearly, because the police car's headlights and overhead lights illuminated the vehicle in which he was riding. *Id.* Appellant tried to exit the vehicle, but police directed him to get back into the car. *Id.* at 13-14. Appellant "was extremely nervous[,]" "visibly shaking[,]" moving around the car and "would not make eye contact" with Officer Barna. *Id.* at 14-15. Officer Barna requested "multiple times" that Appellant stop moving. *Id.* at 14. Appellant nervously "picked up an iPad and started playing with that." *Id.* In total, Appellant displayed behavior indicating consciousness of guilt, specifically, trying to exit the car, moving around in the passenger seat, failing to make eye contact with police, and fidgeting with an iPad. *See* ***Commonwealth v. Micking***, 17 A.3d 924, 926 (Pa. Super. 2011), *citing* ***Commonwealth v. Hughes***, 865 A.2d 761, 792 (Pa. 2004) ("The conduct of an accused following a crime, including 'manifestations of mental distress,' is admissible as tending to show guilt."). Moreover, Officer Barna was able to differentiate the motions Appellant made with regard to picking up the iPad located in the passenger door pocket, in contrast with movements consistent with bending over and secreting something under the seat. *Id.* at 23-24. The trial court credited Officer Barna's testimony and we will not usurp that determination. Accordingly, we conclude the evidence

was sufficient to show that Appellant had both the ability and intent to exercise control of the firearm recovered directly under him.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/30/2016